Salvatore J. **BARTOLOTTA**, Plaintiff,

v.

**UNITED STATES** of America and Liberty Mutual Insurance Company, Defendants.

Robert **PETTERSEN**, Plaintiff,

v.

**LIBERTY MUTUAL INSURANCE COMPANY** and United States of America, Defendants.

Lucian **BOUTIN**, Plaintiff,

v.

**LIBERTY MUTUAL INSURANCE COMPANY**, Defendant.

**Civ. Nos. 10169, 10170, 10515.**

United States District Court
D. Connecticut.

Nov. 2, 1967.

Edward Smith, Hartford, Conn., for plaintiffs Bartolotta and Pettersen.

Samuel Gruber, of Gruber & Turkel, Stamford, Conn., for plaintiff Boutin.

William J. Doyle and Frank E. Callahan, of Wiggin & Dana, New Haven, Conn., for defendant Liberty Mut. Ins. Co.

TIMBERS, Chief Judge.

## QUESTIONS PRESENTED

Motions by defendant Liberty Mutual Insurance Company (Liberty Mutual), pursuant to Rule 12(b) (6), Fed.R.Civ.P., for dismissal of the complaints in each of the instant actions for failure to state claims upon which relief can be granted, present the following identical questions in each action:

(1) Whether Liberty Mutual is a "third person" within the contemplation of the Connecticut Workmen's Compensation Act, Conn.Gen.Stat.. ch. 568, § 31–293

(1958), and, therefore, subject to common law tort actions.

(2) If Liberty Mutual is a "third person" subject to common law tort actions, whether plaintiffs, as a matter of law, have alleged facts sufficient to hold defendant Liberty Mutual liable for common law torts.

The Court, viewing the complaints in each of the actions in the light most favorable to plaintiffs, holds that the first question must be answered in the negative. Therefore, Liberty Mutual's motions for dismissal of the complaints as against it are granted.

Having thus ruled upon the first question in the negative, the Court has decided all that it is required to decide. Nevertheless, if it were necessary to rule on the second question, the Court also would answer this question in the negative.

Accordingly, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

(1) Plaintiffs Robert Pettersen, Salvatore J. Bartolotta, and Lucian Boutin are citizens of the State of Connecticut. Defendant Liberty Mutual, being a Massachusetts corporation and having its principal place of business in that state, is a citizen of Massachusetts.

(2) The amount in controversy in each action exceeds $10,000, exclusive of interest and costs.

(3) Plaintiffs in each action sustained personal injuries arising out of and in the course of their employment. Plaintiffs Pettersen and Bartolotta were overcome by argon gas upon entering a cylindrical chamber, commonly referred to as the "moon room", which was maintained by their employer, Pratt & Whitney Division of United Aircraft Corporation, and used for the purpose of treating metals at high temperatures. Plaintiff Boutin's hand was crushed in a horn press maintained by his employer, Landers, Frary & Clark.

(4) At the time of each of the above incidents, Liberty Mutual was the compensation insurance carrier of each of plaintiffs' employers under the Connecticut Workmen's Compensation Act, Conn. Gen.Stat., ch. 568, § 31–275, et seq. (1958), as amended.

(5) Liberty Mutual reserved the right in each of the contracts of insurance with plaintiffs' employers to make safety inspections of the employers' plants and equipment, and to recommend and require the employers to eliminate unsafe conditions.

(6) From time to time, Liberty Mutual made safety inspections of the employers' plants and equipment, and recommended and required safety changes.

(7) Liberty Mutual failed to inspect the "moon room" of Pratt & Whitney Division of United Aircraft Corporation for any safety defects, nor did it notify Pratt & Whitney Division of United Aircraft Corporation concerning any safety defects in the "moon room" or recommend or require any changes relating to the safety thereof.

(8) Liberty Mutual failed to inspect the horn press of Landers, Frary & Clark on which plaintiff Boutin was injured so as to detect any safety defect in that machine, nor did it require Landers, Frary & Clark to make any safety changes on the machine.

## CONCLUSIONS OF LAW

(1) Jurisdiction in the instant actions is founded on diversity of citizenship and requisite jurisdictional amount.[1]

(2) Where a party sustains personal injuries arising out of and in the course of his employment, the Connecticut Workmen's Compensation Act, Conn.Gen. Stat., ch. 568, § 31–284 (1958), deprives that party of his common law right of action against his employer, but Section 31–293 of the Act preserves his right of action against third persons.

(3) The workmen's compensation insurance carrier of an employer is not a

1. 28 U.S.C. § 1332(a) (1) (1964).

third person within the contemplation of the Connecticut Workmen's Compensation Act, Conn.Gen.Stat., ch. 568, § 31–293 (1958), under the circumstances in the instant actions; rather, a workmen's compensation insurance carrier has the same immunity to common law actions as that of its insured pursuant to Section 31–284 of the Act.

(4) Since the complaints in each of the instant actions allege a common law right to recover from a workmen's compensation insurance carrier for personal injuries sustained by plaintiffs arising out of and in the course of employment by the carrier's insured, Liberty Mutual is entitled to dismissal of the complaints as against it in each of the actions.

[The following conclusions, (5) and (6), although not necessary to a decision in this case in view of the conclusions stated above, nevertheless are set forth since the issues have been raised by the parties.]

(5) Under the law of the State of Connecticut, where a party voluntarily undertakes to do an act which if properly done could have prevented personal injury to another, that party is not liable for such injury if his undertaking neither was relied on by the injured party nor increased the danger to which the injured party was exposed.

(6) Since the complaints in each of the instant actions merely allege that Liberty Mutual reserved the right in its insurance contracts to make safety inspections and recommend and require safety changes, and that Liberty Mutual failed properly to inspect the equipment which caused plaintiffs' injuries and failed to recommend and require safety changes, the Court, if it were necessary to reach this issue, would dismiss the complaints as against Liberty Mutual in each of the instant actions for failure to allege facts sufficient to hold Liberty Mutual liable to plaintiffs. The complaints are wholly devoid of any allegations that Liberty Mutual's actions in any way increased the danger to which plaintiffs were exposed or were relied on in any way by plaintiffs.

## OPINION

This Court has jurisdiction in each of the instant actions based on diversity of citizenship and requisite jurisdictional amount.[2] Plaintiffs are citizens of Connecticut; defendant Liberty Mutual, being a Massachusetts corporation and having its principal place of business in Massachusetts, is a citizen of that state.

The amount in controversy in each action exceeds $10,000, exclusive of interest and costs.

In each action plaintiff was injured in the course of employment. Plaintiffs Pettersen and Bartolotta were overcome by argon gas upon entering a cylindrical chamber, commonly referred to as the "moon room", which was maintained by their employer, Pratt and Whitney Division of United Aircraft Corporation, and used for the purpose of treating metals at high temperatures. Plaintiff Boutin's hand was crushed in a horn press maintained by his employer, Landers, Frary & Clark. In each instance, at the time of the injury, defendant Liberty Mutual was the compensation insurance carrier for the employer under the provisions of the Connecticut Workmen's Compensation Act (the Act).[3]

Plaintiffs in these actions are not suing Liberty Mutual to collect the sums due them under the Act. Their right to these sums appears undisputed. Rather, they are suing Liberty Mutual on the ground that its negligence was responsible for their injuries. Plaintiffs allege that Liberty Mutual reserved the right in its insurance contracts to make safety inspections of the employers' plants and equipment, and that Liberty Mutual from time to time made such inspections and recommended and required corrective changes in the plants and equipment. It is plaintiffs' contention that Liberty Mutual made its safety inspections in a

2. Id.

3. Conn.Gen.Stat., ch. 568, § 31–275, et seq. (1958), as amended.

negligent manner so that Liberty Mutual permitted dangerous conditions to continue to exist until they resulted in injury to plaintiffs.

 The Connecticut Workmen's Compensation Act,[4] like workmen's compensation acts in other states, deprives covered employees of the right to sue their employers for common law negligence[5] while guaranteeing them certain statutory sums from their employers in case of personal injury arising out of and in the course of employment.[6] In effect, the Connecticut Act, and similar acts of other states, limits the amounts recoverable to lesser sums than an employee might recover at common law, but makes such amounts payable in every instance of work-connected injury, rather than in just those instances where an employee can prove breach of a common law duty.[7] But the Connecticut Act, and similar acts of other states, does not limit common law rights of action against "third persons."[8] Thus, if an employee is hurt while on the job through the negligent action of a third person, although the employee can still collect the statutory amount available under the Connecticut Act from his employer, he may, nevertheless, sue the third person for common law tort and collect perhaps a much larger amount. It is just this course that plaintiffs in these actions are attempting to pursue. They are suing Liberty Mutual as a third party allegedly liable to them for common law tort.

Liberty Mutual argues in support of its motions to dismiss these actions that, as the compensation carrier of plaintiffs' employers, it must be deemed to have the same immunity from common law actions as plaintiffs' employers have under Section 31–284(a) of the Act.[9] It thus is Liberty Mutual's contention that it is not a third person subject to common law actions within the contemplation of Section 31–293 of the Act.[10] The issue is solely one of law and is of initial impression, never having been ruled

4. Id.

5. Conn.Gen.Stat., ch. 568, § 31–284(a) (1958), provides as follows:
 "(a) An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter."

6. Conn.Gen.Stat., ch. 568, §§ 31–306 through 31–314 (1958).

7. Under the Act, the employee need no longer show that the employer acted negligently; the employer no longer has the defenses of contributory negligence, neligence of fellow employees, or assump-

tion of risk. Powers v. Hotel Bond Co., 89 Conn. 143, 93 A. 245 (1915).

8. Conn.Gen.Stat., ch. 568, § 31–293 (1958); Geraty v. Kaufman, 115 Conn. 563, 567–568, 162 A. 33, 34–35 (1932).
 Section 31–293 provides as follows:
 "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such other person to recover any amount that he has paid or has become obligated to pay as compensation to such injured employee."

9. Supra note 5.

10. Supra note 8.

upon with respect to the Connecticut Workmen's Compensation Act.[11]

■ If the Act specifically granted or denied "employer immunity" to an employer's compensation carrier, the task would be simple. Since it does not, the Court under its diversity jurisdiction must look to the statute as a whole, considering its scope and purpose, in order to make an informed prediction as to what the Connecticut Supreme Court would determine the legislative intent to be if confronted with the question.[12] Having done so, the Court concludes, under the circumstances here presented, that a workmen's compensation insurance carrier is immune from common law actions to recover for injuries arising out of and in the course of a plaintiff's employment by the carrier's insured.

A reading of the entire Act makes it evident that the Connecticut legislature considered the insurer to be the alter ego of the employer. Section 31–340 of the Act provides in part:

"Every such policy shall contain an agreement by the insurer to the effect that the insurer shall be directly and primarily liable to the employee and, in the event of his death, to his dependents . . . to pay to him or to them the compensation, if any, for which the employer is liable; but payment in whole or in part of such compensation by either the employer or the insurer shall to the extent thereof be a bar to the recovery against the other of the amount so paid."

Furthermore, Section 31–342 provides:

"[T]he [compensation] commissioner having jurisdiction may make his award directly against such employer, insurer or both, except that, when there is doubt as to the respective liability of two or more insurers, he shall make his award directly against such insurers; and such awards shall be enforceable against the insurer in all respects as provided by law for enforcing awards against an employer, and the proceedings on hearing, finding, award, appeal and execution shall be in all respects similar to that provided by law as between employer and employee."

And Section 31–287 provides:

"No policy of insurance against liability under this chapter, except as provided in section 31–284, shall be made unless the same covers the entire liability of the employer thereunder and contains an agreement by the insurer that, as between the employee and the insurer, notice or knowledge of the occurrence of injury by the insured shall be deemed notice or knowledge by the insurer, that jurisdiction of the insured for the purposes of this chapter shall be jurisdiction of the insurer and the insurer shall in all things be bound by and subject to the findings, awards and judgments rendered against such insured; and also that, if the insured becomes insolvent or is discharged in bankruptcy during the period that the policy is in operation, or the compensation, or any part of it, is due and unpaid or if an execution upon a judgment for compensation is returned unsatisfied, an injured employee or other person entitled to compensation under the provisions of this chapter may enforce his claim to compensation against the insurer to the same extent that the insured could have enforced his claim against such insurer had he paid compensation."

In addition, numerous other sections of the Act indicate that the status of the insurer is the equivalent of that of the employer.[13]

11. Supra note 3.

12. Ricciuti v. Voltarc Tubes, Inc., 277 F. 2d 809 (2 Cir. 1960); Masterson v. Atherton, 223 F.Supp. 407, 410 (D.Conn. 1963), aff'd, 328 F.2d 106 (2 Cir. 1964); Hazlitt v. Fawcett Publications, Inc., 116 F.Supp. 538, 544 (D.Conn. 1953).

13. The Act. § 31–296 (in a suggested form); § 31–300 (interest penalties due to fault or neglect of employer or insurer); § 31–326 (proceedings against delinquent insurance companies or employers); § 31–327 (payment of fees and expenses by employer or insurer); §

In the context of the above provisions, the Act's definition of "employer" so as to include the employer's "legal representative" becomes significant.[14] The term "legal representative" admittedly "has no fixed and unyielding meaning in law."[15] But certainly when an insurer is directly and primarily liable for payment of compensation to an insured employer's employee, the insurer is the "legal representative" of the employer. The insurer is thus entitled to the immunity from common law actions which Section 31–284 confers upon employers.[16]

The wording of the provision of the Act which preserves the right to institute actions against third persons is itself indicative of the intent not to treat insurers as third persons.[17] First of all, it makes a distinction between those liable to pay "compensation" and those liable to pay "damages", the latter being amenable to suit. Since the insurer, like the employer, is liable to pay compensation, it would be unreasonable also to find the employer to be "some other person" liable to pay damages. Furthermore, the provision, as construed by the courts, subrogates a party paying compensation to the rights of the injured employee against third persons.[18] If the insurer were treated as a third person, it would be subrogated to rights against itself, a logical incongruity.

The great weight of authority with respect to similar workmen's compensation acts of other states holds that an insurer is not a third person within the contemplation of such acts. E.g., Williams v. United States Fidelity and Guaranty Company, 358 F.2d 799 (4 Cir. 1966) (Virginia Workmen's Compensation Act); Sarber v. Aetna Life Ins. Co., 23 F.2d 434 (9 Cir. 1928) (California Workmen's Compensation Act); Mustapha v. Liberty Mutual Insurance Co., 268 F. Supp. 890 (D.R.I.1967) (Rhode Island Workmen's Compensation Act); Donohue v. Maryland Casualty Company, 248 F.Supp. 588 (D.Md.1965), aff'd per curiam, 363 F.2d 442 (4 Cir. 1966) (Maryland Workmen's Compensation Act); Kotarski v. Aetna Casualty and Surety Company, 244 F.Supp. 547 (E.D. Mich.1965) (Michigan Workmen's Compensation Act); Schulz v. Standard Accident Ins. Co., 125 F.Supp. 411 (E.D. Wash.1954) (Idaho Workmen's Compensation Act). In Williams v. United States Fidelity & Guaranty Co., supra at 801, the court said:

"At all events, we are not persuaded from our examination of the [Virginia Workmen's Compensation] Act that the insurer is not an employer wherever the claim is based upon an injury arising in the course of the employment. Put another way, the carrier is an employer whenever the claim is one for which compensation is payable. In these situations the responsibility of the employer is the responsibility of the insurer, logically warranting equal

---

31–341 (notice of compensation hearing sent to insurer to be the same as one sent to employer and insurer to be party to the hearing); § 31–343 (certain defenses not available to insurer against an employee); § 31–344 (limitation on the representation which will vitiate policy as between the insurer and insured); § 31–346 (damages to insurer for material misstatements by insured); § 31–347 (insurer to provide schedule of compensation experience); § 31–348 (insurance companies to report risks and cancellation of policies, subject to penalties); § 31–355 (insurer and employer to be liable to state if state has to pay second injury compensation).

14. The Act, § 31–275.

15. Security Insurance Co. of New Haven v. White, 236 F.2d 215, 217 (10 Cir. 1956). Counsel for plaintiff Boutin claims the term "legal representative" includes only persons to whom in some legal manner property has devolved or is to devolve. But in support of this position counsel cites only cases involving issues with respect to descent of property. As to such issues, this definition would be expected.

16. Supra note 5.

17. Supra note 8.

18. Supra note 8. Greene v. Verven, 203 F.Supp. 607, 611 (D.Conn.1962); Haslam v. Trailways of New England, Inc., 59 F.Supp. 441, 443 (D.Conn.1945).

immunity. Semble, in reason, if the carrier takes the burdens of the employer it should be entitled as well to his benefits."

In the recent case of Mustapha v. Liberty Mutual Insurance Co., supra at 895, the court held that "the legislature never envisioned that the insurance carrier would be a third-party and it appears to this court that the whole purpose and scheme of the Rhode Island Act would be perverted if this court interpreted the act in any other manner than to conclude that the employer and insurance carrier have been equalized. . . . ." The opinion of the court in Kotarski v. Aetna Casualty and Surety Company, supra, is to the same effect. Although the statutes in each case may vary from the Connecticut Act in some slight respects, the basic reasoning of the court in each case is applicable here.

Counsel for plaintiffs cite several cases in support of their contention that Liberty Mutual is a third person subject to suit: Mager v. United Hospitals of Newark, 88 N.J.Super. 421, 212 A.2d 664 (1965), aff'd, 46 N.J. 398, 217 A.2d 325 (1966); Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (1964); Mays v. Liberty Mutual Ins. Co., 323 F.2d 174 (3 Cir. 1963); Fabricius v. Montgomery Elevator Co., 254 Iowa 1319, 121 N.W.2d 361, 93 A.L.R.2d 591 (1963); Smith v. American Employers' Ins. Co., 102 N.H. 530, 163 A.2d 564 (1960). These cases, however, are not controlling here.

In Nelson v. Union Wire Rope Corp., supra, involving the Florida Workmen's Compensation Act, the Supreme Court of Illinois made it clear that its decision to hold the carrier amenable to suit as a third person was based on the distinctive features of that act. In discussing the weight of authority holding the insurer immune from suit, the court said:

"The ratio decidendi in all of the cases was that since the acts expressly charged the carriers with the liability of the employer, the carrier was likewise entitled to the immunities of an employer.

"The Florida act has no comparable provision which expressly makes the insurer primarily and directly liable to an injured employee, and neither does it make express provision which permits the liability of the insurer to be substituted for the liability of the employer."

The Connecticut Act, as indicated above, provides for such primary and direct liability on the part of the insurer.

The Iowa Workmen's Compensation Act, considered by the court in Fabricius v. Montgomery Elevator Co., supra, unlike the Connecticut Act, had no statutory third party liability provision.

It is unnecessary to consider the provisions of the New Hampshire Workmen's Compensation Act involved in Smith v. American Employers' Ins. Co., supra, and the provisions of the Pennsylvania Workmen's Compensation Act involved in Mays v. Liberty Mutual Ins. Co., supra, because in each instance the acts have been amended explicitly to provide insurers with the immunity of employers.[19] The Court is inclined to the view that such amendments indicate that the prior court decisions misinterpreted legislative intent.[20]

Finally, this Court frankly admits that the decision of the Appellate Division of the New Jersey Superior Court, as affirmed by the New Jersey Supreme Court, in Mager v. United Hospitals of Newark, supra, is authority in support of holding Liberty Mutual amenable to suit as a third person. However persuasive that opinion may be, it still does not convince this Court that the Connecticut legislature ever intended that an insurer be treated as a third person under § 31–293 of the Act; nor does this Court believe that the Connecticut Supreme Court would ever so hold. The *Mager* decision

---

[19]. N.H.Rev.Stat.Ann. 281:12 (1961); 77 P.S.Pa. § 501 (1966).

[20]. See Jordan v. Roche, 228 U.S. 436, 446 (1913); Commissioner v. Estate of Holmes, 326 U.S. 480, 487–488 (1946).

represents a philosophy towards workmen's compensation which few courts and fewer legislatures have espoused; and there is every indication that the Connecticut legislature never intended to be in the minority on this issue.

■ Since the Court concludes that a workmen's compensation insurer is not amenable to suit as a third person by a party suffering injury arising out of or in the course of employment, Liberty Mutual's motion in each of the instant actions must be granted.

■ In view of the foregoing, the Court has decided all that it is required to decide. Liberty Mutual, however, raises a second argument in support of its motions to dismiss which, if it were necessary for the Court to reach, would also warrant dismissal of the complaints. Liberty Mutual contends that the complaints allege nothing more than that Liberty Mutual, in conducting a voluntary undertaking, had the opportunity to prevent harm to plaintiffs but negligently failed to do so. Liberty Mutual is correct in concluding that such allegations are an insufficient basis for imposing liability on the compensation carrier. It is true, as Justice Cardozo has said, that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully.[21] But it is the opinion of this Court that in Connecticut this principle is not a basis for liability where the undertaking neither is relied upon by the injured party nor increases the risk of harm to the injured party. Palimas v. Aress Realty Co., 130 Conn. 687 (1944), supports this position, although admittedly the opinion is not altogether free of ambiguity. Nevertheless, any doubts created by this ambiguity are resolved by the position of Restatement (Second) of Torts § 323 (1965), which provides as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

■ Plaintiffs do not allege that Liberty Mutual had assumed the employer's duty of inspecting and maintaining a safe place to work or that it had contracted to provide a safety inspection service.[22] Plaintiffs fail to allege in any way that they relied to their detriment on Liberty Mutual's reservation of the right to inspect or on the inspections that were made. Furthermore, there are no allegations that Liberty Mutual's actions in any way increased the risk of harm to plaintiffs. To subject a compensation insurance carrier to liability with respect to voluntary safety inspections could have a far reaching detrimental effect in the area of industrial safety and accident prevention.[23] Under the circumstances, therefore, such insufficiency in the allegations of the complaints would warrant their dismissal if it were necessary for the Court to reach the issue.[24]

21. Glanzer v. Shephard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425 (1922) (Cardozo, J.); Chipman v. National Savings Bank, 128 Conn. 493, 495, 23 A.2d 922, 924 (1942); Zotkin v. Katz, 126 Conn. 445, 11 A.2d 843 (1940).

22. Cf. Bifield v. Bruner-Ritter, 144 Conn. 747, 137 A.2d 751 (1958) (defendant assumed duty to maintain work area); Dean v. Hershowitz, 119 Conn. 398, 177 A. 262 (1935) (defendant failed to make repair which she was obligated to make, of *known* dangerous condition); Breed v. Philgas Co., 118 Conn. 128, 171 A. 14 (1934) (service contract involving inherently dangerous substance).

23. See Kotarski v. Aetna Casualty and Surety Co., 244 F.Supp. 547, 553 (E.D. Mich.1965).

24. See Gerace v. Liberty Mutual Insurance Co., 264 F.Supp. 95 (D.D.C.1966); DeJesus v. Liberty Mutual Insurance Co., 423 Pa. 198, 223 A.2d 849 (1966).

## ORDER

ORDERED that the Clerk of this Court is directed to enter judgment dismissing the complaints in each action as against defendant Liberty Mutual, but without costs.