**Jeff McHARGUE and Julia McHargue, Plaintiffs,**

v.

**STOKES DIVISION OF PENNWALT CORPORATION; John Doe I; Continental Insurance Companies; and John Doe II, Defendants.**

**Civ. A. No. 86–A–1301.**

United States District Court,
D. Colorado.

Dec. 17, 1986.

Blaine A. Rutenbeck, Denver, Colo., J. Conard Metcalf, Williams, Trine, Greenstein & Griffith, P.C., Boulder, Colo., for plaintiffs.

James A. Clark, Bruce D. Pringle, D.J. Poyfair, Baker & Hostetler, Denver, Colo., for defendant Stokes.

Larry A. Henning, Wendelyn K. Walberg, Walberg Law Offices, Denver, Colo., for defendant Continental.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT CONTINENTAL INSURANCE COMPANIES' MOTION FOR JUDGMENT ON THE PLEADINGS

ARRAJ, District Judge.

This action is before the court on defendant Continental Insurance Companies' motion for judgment on the pleadings. The parties have submitted briefs and other documentation in support of their respective positions of this motion, and I have heard oral argument on the issues.

### BACKGROUND

Defendant Stokes Division of Pennwalt Corporation (Stokes) is a Pennsylvania corporation in the business of producing plastic injection molding machines. Defendant Continental Insurance Companies (Continental), a New Jersey corporation, is the workmen's compensation insurer for Denver Plastics, Inc., plaintiff Jeff McHargue's employer.

On February 13, 1984, Jeff McHargue was removing parts from the mold cavity of a machine manufactured by defendant Stokes when the molding press unexpectedly closed, causing injuries to his hand and arm. Plaintiff's injuries took place within the scope of his employment at Denver Plastics, Inc.

Plaintiff subsequently filed a workmen's compensation claim with his employer and defendant Continental. Under this claim, plaintiff has received or will receive approximately $150,000.00 in compensation for his injuries.

On June 27, 1986, Jeff and Julia McHargue filed the present action against Stokes and Continental pursuant to Colo.Rev.Stat. § 8-52-108 (1986), which allows an injured employee to accept workmen's compensation benefits and also proceed against a third person who caused the injury. Plaintiffs allege in their complaint that defendant Continental undertook or purported to undertake to provide safety inspection services of the molding machine pursuant to its capacity as workmen's compensation carrier, and that it negligently performed this undertaking, causing the plaintiff's injuries.

Defendant Continental then moved for judgment on the pleadings, on the ground that it is not subject to liability as a third-party tortfeasor under the Colorado Workmen's Compensation Act, Colo.Rev.Stat. § 8-40-101 et seq. (1986). The parties submitted briefs in support of their respective positions on this motion, and oral argument was had on November 17, 1986. At that time, defendant Continental's motion was taken under advisement, and the parties were granted twenty days to supplement their pleadings. Supplemental briefs have been received from defendants Stokes and Continental.

### DISCUSSION

The sole issue presented by this motion is whether the Colorado Workmen's Compensation Act prevents the bringing of a third-party action against the defendant, the workmen's compensation carrier of the employer, for negligently conducted safety

inspections undertaken pursuant to defendant's capacity as a workmen's compensation carrier. For the reasons stated below, this court holds that it does.

This issue is one of first impression in Colorado. Where no state court has clearly addressed an issue, the federal court must use its own discretion to determine what the highest state court would probably hold were it called upon to decide the issue. *Herndon v. Seven Bar Flying Service, Inc.*, 716 F.2d 1322, 1332 (10th Cir. 1983), *cert. denied* 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). In doing so, this court may consider all relevant resources, including decisions of courts of the state, decisions of other state courts, federal decisions, and the general weight and trend of authority. *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 569 (10th Cir.1980).

The extension of the employers immunity from third-party suit to the workmen's compensation insurance carrier is a question of statutory interpretation. *Kifer v. Liberty Mutual Insurance Co.*, 777 F.2d 1325, 1331 (8th Cir.1985). The fundamental rule of statutory interpretation is that the court should give effect to the intention of the legislature, as expressed in the statute, and an unambiguous statute should be given effect according to its plain and obvious meaning. *Christner v. Poudre Valley Cooperative Ass'n.*, 235 F.2d 946, 950 (10th Cir.1956); *General Electric Company v. Webco Construction Co.*, 164 Colo. 232, 433 P.2d 760, 762 (1967).

A major concern of the Workmen's Compensation Act is to provide a method whereby claims arising out of industrial accidents may be speedily resolved. *Bellendir v. Kezer*, 648 P.2d 645, 647 (Colo. 1982). The Act grants the employee compensation from the employer, even though the employee may be negligent and even if the employer is not negligent. In return, the employer who is responsible under the Workmen's Compensation Act is granted immunity from common-law claims. *Frohlick Crane Service, Inc. v. Mack*, 182 Colo. 34, 510 P.2d 891, 893 (1973). Although the Workmen's Compensation Act is to be liberally construed, its provisions must not be pushed beyond the clear limits of their purpose. *Industrial Commission v. Baldwin*, 139 Colo. 268, 338 P.2d 103, 105 (1959).

Plaintiff's right to bring a third-party action is governed by Colo.Rev.Stat. § 8–52–108(1) (1986), which provides in relevant part that:

> Nothing in this section shall be construed as limiting in any way the right of the injured employee to elect to take compensation under articles 40 to 54 of this title and also proceed against the third party causing the injury to recover any damages in excess of the subrogation rights described in this section.

The Colorado Supreme Court has interpreted the term "third party" to apply to anyone incurring a common law liability for injury to workmen not immune from suit under the Act. *Industrial Commission v. Standard Insurance Co.*, 149 Colo. 587, 370 P.2d 156, 158 (1962); *Continental Sales Corporation v. Stookesberry*, 170 Colo. 16, 459 P.2d 566, 569 (1969).

The statutory section of the Colorado Workmen's Compensation Act granting immunity is Colo.Rev.Stat. § 8–42–102 (1986), which states that:

> An employer who has complied with the provisions of articles 40 to 54 of this title, including the provisions relating to insurance, shall not be subject to the provisions of section 8–42–101; nor shall such employer *or his insurance carrier, if any, insuring the employer's liability under said articles be subject to any other liability for the death of or personal injury to any employee*, except as provided in said articles; and all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies for and on account of such death of or personal injury to any such employee and accruing to any person are abolished except as provided in said articles.

(Emphasis added.) The plain and obvious meaning of this language is that the legislature intended to extend to the employer's workmen's compensation insurance carrier the same immunity from liability enjoyed under the Act by the employer himself. This interpretation is bolstered by the legis-

lative history of section 8–42–102. Before 1967, Colo.Rev.Stat. § 81–3–2 (1963) (the precurser of the present section 8–42–102) read in relevant part as follows:

> [N]or shall such employer be subject to any other liability whatsoever for the death of or personal injury to any employee, ...

In 1967 the Colorado Legislature amended section 81–3–2 to read, in relevant part:

> [N]or shall such employer *or the insurance carrier, if any, insuring such employer's liability under this chapter* be subject to any other liability whatsoever for the death of or personal injury to any employee, ...

1967 *Colo.Sess. Laws*, Ch. 388, p. 845 (emphasis added). At the same time, the Colorado Legislature amended the statutory sections dealing with availability of common law defenses, surrender of other remedies, and compensation as the exclusive remedy, to include substantially similar language. *Compare* Colo.Rev.Stat. § 81–3–3 (1963); Colo.Rev.Stat. § 81–4–4 (1963); Colo.Rev.Stat. § 81–18–8 (1963), *with* Colo. Rev.Stat. § 8–42–103 (1986); Colo.Rev.Stat. § 8–43–104 (1986); Colo.Rev.Stat. § 8–60–108 (1973) (repealed effective Sept. 1, 1975). These changes in the law, occurring at a time when many state legislatures were amending their workmen's compensation statutes to extend immunity to insurance carriers, *see* 2A A. Larson, *The Law of Workmen's Compensation*, § 72.91 (1983), evince a clear legislative intention to extend to workmen's compensation insurance carriers the same immunity from suit enjoyed by employers. *Cf. Kerner v. Employers Mutual Liability Insurance Co. of Wisconsin*, 35 Wis.2d 391, 151 N.W.2d 72, 75 (1967).

This court notes also that Professor Arthur Larson, who is generally regarded as the leading academic authority on worker's compensation statutes, has reached a similar conclusion in regard to the issue of insurance carrier immunity under the Colorado Act. In his treatise, Professor Larson includes the Colorado Act within the category of statutes that "virtually dispose of the issue by express language," usually either by generally identifying the carrier with the employer, or by specifically extending immunity to the carrier. 2A A. Larson, *The Law of Workmen's Compensation*, § 73.93 at p. 14–288 (1983).

Both plaintiffs and defendant Stokes contend that *Savio v. Travelers Insurance Co.*, 678 P.2d 549 (Colo.App.1983), *affirmed in part, reversed in part*, 706 P.2d 1258 (Colo.1985) indicates that the Colorado Supreme Court would find that an insurance company's negligent inspection is not a risk contemplated by the Act's provisions. This court disagrees.

In *Savio*, plaintiff suffered a work related injury and filed a workmen's compensation claim with his employer and the defendant, the employer's insurance carrier. The insurer admitted liability on behalf of the employer. Savio subsequently brought suit against the insurance carrier, alleging that the insurer had negligently delayed the payment of rehabilitation benefits.

In holding that Colorado's Workmen's Compensation Act does not bar a tort claim against an insurance carrier in connection with the handling of a claim for compensation, the Colorado Court of Appeals reasoned that the Act was intended to cover only those injuries arising out of a risk or hazard to which the employee is exposed in the performance of his job. Since the conduct complained of occurred *after* an accident covered by the Act, and the damages were not sustained within the scope of the employment relationship, the court held that the claim was not precluded by the Workmen's Compensation Act. *Id.* at p. 552.

The Colorado Supreme Court affirmed, reasoning that Colo.Rev.Stat. § 8–52–102(1)(b) (Supp.1984) (now § 8–52–102(1)(b) (1986)) limits the Act's coverage to injuries arising when "the employee is performing service arising out of and in the course of his employment." Since the injuries alleged in Savio's complaint did not arise during the course of his employment, the court held that the Act did not apply to those injuries. *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1265 (Colo.1985).

*Savio* is not analogous to the present case. Here, the conduct complained of by

the McHargues—the allegedly negligent inspection—occurred before the accident. The accident itself was of the type clearly covered by the Act, and the damages claimed were also clearly sustained within the scope of the employment relationship. Indeed, the Court of Appeals and the Colorado Supreme Court in *Savio* impliedly recognize that the Act does preclude certain common-law claims against the carrier; those arising from injuries sustained within the scope of the employment relationship.

The question of a workmen's compensation carrier's amenability to suit has produced substantial activity in other jurisdictions in the workmen's compensation field since the early 1960's. *See* 2A A. Larson, *The Law of Workmen's Compensation*, § 72.91 (1983) and cases cited therein. Unfortunately, since the reported decisions were decided on the basis of specific provisions of the particular workmen's compensation legislation under consideration, they are of very limited precedential value in the present case. However, there appears to be a definite trend toward the recognition of immunity for compensation carriers in the performance of safety inspections of an employer's premises. *See Reid v. Employers Mutual Liability Insurance Co.*, 59 Ill.2d 194, 319 N.E.2d 769 (1974); *Young v. O.A. Newton & Son Co.*, 477 A.2d 1071 (Del.Super.Ct.1984); *Kifer v. Liberty Mutual Insurance Co.*, 777 F.2d 1325 (8th Cir.1985); *Gray v. Charles Beck Machine Corp.*, 495 F.Supp. 250 (S.D.Ga.1980); *Pettigrew v. Home Insurance Co.*, 191 Neb. 312, 214 N.W.2d 920 (1974). In construing the Colorado Act, this court may properly take cognizance of this emerging trend.

Many cases from other jurisdictions hold that when the workmen's compensation carrier, by force of statute, is directly and primarily liable to the injured employee, the legislature intended the insurer to be equated with the employer and given tort immunity. *Kotarski v. Aetna Casualty and Surety Co.*, 244 F.Supp. 547, 557 (E.D. Mich.1965), *affirmed* 372 F.2d 95 (6th Cir. 1967) (Although *Kotarski* was later disavowed as a correct statement of Michigan law in *Ray v. Transamerica Insurance Co.*, 10 Mich.App. 55, 158 N.W.2d 786 (1968), that case was subsequently overturned by statutory amendment. Thus, the persuasive policy concerns expressed in *Kotarski* have been adopted by the Michigan legislature); *Bartolotta v. United States*, 276 F.Supp. 66, 71 (D.Conn.1967), *affirmed* 411 F.2d 115 (2nd Cir.1969); *West v. Atlas Chemical Industries, Inc.*, 264 F.Supp. 697, 702 (E.D.Mo.1966); *Reid v. Employers Mutual Liability Insurance Co., supra.*

This factor is also present in the Colorado Act. Colo.Rev.Stat. § 8–44–105 (1986) provides that:

> Every contract insuring against liability for compensation or insurance policy evidencing the same shall contain a clause to the effect that *the insurance carrier shall be directly and primarily liable to the employee ... to pay compensation, if any, for which the employer is liable ...*

(Emphasis added.) Section 8–44–105 also provides that notice or knowledge on the part of the employer shall be deemed notice or knowledge to the insurance carrier; that jurisdiction over the employer shall be deemed jurisdiction over the insurance carrier; that the insurance carrier shall be bound by all findings and awards against the employer; and that the insurance carrier shall pay the employee directly. Provisions such as those listed above show that it was the intent of the legislature to equate the insurance carrier with the employer where responsibility for providing the statutory benefits to the employee is concerned. *Kotarski v. Aetna Casualty and Surety Co., supra* at p. 556; *Bartolotta v. United States, supra; Modjeski v. Atwell, Vogel and Sterling, Inc.*, 309 F.Supp. 119, 122 (D.Minn.1969). It is, within the statute, this clear pattern of creating an inseparable identity between the employer and the insurer which militates against holding the insurer liable to suit as a third party under Colo.Rev.Stat. § 8–52–108 (1986).

Furthermore, a reading of the Colorado third-party tortfeasor provision, Colo.Rev. Stat. § 8–52–108 (1986), indicates that it was not envisioned that the insurance carrier would be a third party. In the event

that an employee injured by a third party elects to take compensation, § 8–52–108 provides that the insurance carrier "shall be subrogated to the rights of the injured employee against said third party causing the injury." The wording of this provision clearly indicates that the "third party" against whom an action may be brought cannot be the insurance carrier. Any other construction would produce the absurd result that the insurer would have a statutory right to sue itself. *See Kifer v. Liberty Mutual Insurance Co., supra* at p. 1333; *Kotarski v. Aetna Casualty and Surety Co., supra* at p. 553; *Horne v. Security Mutual Casualty Co.,* 265 F.Supp. 379, 383–384 (E.D.Ark.1967).

It is apparent that safety inspections are directly related to the insurer's function as a compensation carrier. While it is true that such inspections inure to its financial benefit by reducing accidents and thereby reducing its exposure on its workmen's compensation policy, it is also obvious that the employees are beneficiaries of such safety inspections and accident-prevention programs. If compensation carriers were held subject to liability for making such inspections, it is quite likely that the consequences would include a substantial increase in worker's compensation insurance premiums for all employers, the abandonment of many safety programs currently undertaken by worker's compensation carriers, and a breakdown in the expeditious and informal administration of worker's compensation claims, all to the detriment of employees and employers alike. *See Modjeski v. Atwell, Vogel and Sterling, Inc., supra; Kifer v. Liberty Mutual Insurance Co., supra.*

In conclusion, this court recognizes that the entire concept of workmen's compensation is of legislative creation, and therefore must be legislatively changed if a different policy is appropriate. Defendant Stokes places great reliance on Professor Larson's discussion of the considerations which support and negate carrier immunity from tort suit, and urges us to adopt Larson's proposals. *See* 2A A. Larson, *The Law of Workmen's Compensation,* § 72.97 (1983). Whether Larson's proposal warrants modi-

fication of the statutory immunity granted the carrier under the Colorado Workmen's Compensation Act is a matter of public policy which the legislature may properly address.

Accordingly, it is

ORDERED that defendant Continental Insurance Companies' motion for judgment on the pleadings is GRANTED.