Raymond L. NICHOLS

v.

CANTARA & SONS.

Richard L. MOOERS

v.

AUGUSTA AUTO MALL.

Supreme Judicial Court of Maine.

Argued Sept. 21, 1994.
Decided Feb. 15, 1995.

David Ordway (orally), Ordway & Associates, Biddeford, for Nichols.

Maurice Libner (orally), McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, for Mooers.

Thomas V. Laprade (orally), Black, Lambert, Coffin & Rudman, Portland, for Cantara & Sons.

Evan M. Hanson (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for Augusta Auto Mall.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

DANA, Justice.

Employees Raymond L. Nichols and Richard L. Mooers, in this consolidated appeal raise the issues of whether, pursuant to 39 M.R.S.A. § 68 (1989), the Workers' Compensation Board erred in failing to allocate a portion of a third-party settlement to the employee's spouse's loss of consortium claim when the parties to the settlement made no express allocation. They also question whether the Board properly handled the employer's lien under section 68 with respect to a third-party settlement relating to one work related injury when the workers' compensation benefits paid or payable are partially attributable to a second work related injury. We conclude that, pursuant to section 68, the employee bears the burden of showing that a portion of a third-party settlement is alloca-ble to a loss of consortium claim and that, absent an express agreement or a judicial allocation, the Board did not err in concluding that both employees failed to meet that burden of proof. Because we also conclude that the employer is only entitled to a lien against the third-party recovery for the amount of the benefits paid or payable for that portion of the employee's incapacity for which the third-party is responsible, we affirm the decision in *Nichols,* vacate the decision in *Mooers,* and remand the latter decision to the Board for further proceedings.

### 1. *Nichols*

On November 16, 1979, Raymond L. Nichols suffered a work related injury to his back while his employer, Cantara & Sons, was insured by Maine Bonding & Casualty. Pursuant to Commission decrees in 1981, Nichols was awarded total incapacity benefits for a period ending on June 2, 1980. Nichols suffered a second compensable injury on October 31, 1984, while employed by Buck/C & G Construction, which was also insured by Maine Bonding. By agreement, Buck/C & G accepted responsibility for the second injury and paid benefits to Nichols.

Nichols and his spouse brought a civil action against a third party responsible for the 1979 injury and ultimately settled that claim for $75,000. After deduction of attorney fees and expenses, Nichols received approximately $50,000. In November 1990 Maine Bonding notified Nichols that it was unilaterally offsetting two-thirds of its future liability against the third-party recovery, based on Maine Bonding's determination that the 1979 injury contributed to two-thirds of Nichols's ongoing incapacity.

In 1991 Nichols filed several petitions with the Workers' Compensation Commission, including a petition seeking to allocate a portion of the settlement to his spouse's loss of consortium claim, thereby protecting that portion of the settlement from the employer's lien. *See Dionne v. Libbey–Owens Ford Co.,* 621 A.2d 414, 418 (Me.1993) (hereinafter *Dionne II* ). Nichols testified that the tort settlement included his wife's claim for loss of consortium, but Nichols did not enter a copy of the complaint or the settlement

agreement in the record. The hearing officer concluded that Nichols's testimony, by itself, did not give the Board a sufficient factual basis for calculating an allocation for loss of consortium and found that Nichols failed to meet his burden of proof to show a proper allocation. The Board awarded Cantara & Sons a lien against the full third-party settlement to be applied against two-thirds of its obligation to pay workers' compensation benefits.

Nichols contends that the Board erred in awarding a lien in the full amount of the settlement (net of attorney fees) without allocating a portion of the tort recovery to lost consortium. Title 39 M.R.S.A. § 68 provides, in pertinent part:

> When an injury or death for which compensation or medical benefits are payable under this Act shall have been sustained under circumstances creating in some person other than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim such compensation and benefits or obtain damages from or proceed at law against such other person to recover damages.

> If the injured employee elects to claim compensation and benefits under this Act, any employer having paid such compensation or benefits or having become liable therefor under any compensation payment scheme shall have a lien for the value of compensation paid on any damages subsequently recovered against the third person liable for the injury....

> If the employee or compensation beneficiary recovers damages from a third person, he shall repay to the employer or compensation insurer, out of the recovery against the third person, the benefits paid to him by the employer or compensation insurer under this Act, less said employer's or compensation insurer's proportionate share of cost of collection, including reasonable attorney's fees.

> If the employer or compensation insurer shall recover from a third person damages in excess of the compensation and benefits so paid or for which he has thus become liable, then any such excess shall be paid to the injured employee....

39 M.R.S.A. § 68 (1989).[1]

Nichols relies primarily on our decisions in *Dionne v. Libby–Owens Ford Co.*, 565 A.2d 657 (Me.1989) (hereinafter *Dionne I*) and *Dionne II*, 621 A.2d 414. In *Dionne I*, we held that the Commission has jurisdiction to determine the employer's right to a lien against a third-party settlement pursuant to its broad authority to adjudicate a petition for review as provided in 39 M.R.S.A. § 100 (1989). 565 A.2d at 658. In *Dionne II*, we held that an employer is not entitled to a lien against that portion of a third-party settlement that is allocated to a spouse's lost consortium.

Relying on *Dionne I*, Nichols contends that the Board has broad authority to determine subrogation rights which includes the authority to calculate a reduction for Nichols's spouse's loss of consortium claim. This argument is misplaced. *Dionne I* did not address the *burden of proof* required to show the employee's net recovery from a third-party settlement. While the Board has broad authority to determine subrogation rights, that authority must be confined within the Board's general authority as provided by the Workers' Compensation Act and limited to areas within its traditional expertise. The Board's "expertise is limited to the Maine Workers' Compensation Act," *LeBlanc v. United Eng'rs & Constructors, Inc.*, 584 A.2d 675, 677 (Me.1991), and the Board has "only such authority as is conferred upon it by express legislative grant or such as arises therefrom by implication as incidental to full and complete exercise of the powers granted." *Clark v. International Paper Co.*, 638 A.2d 65, 66 (Me.1994) (quoting *Hird v. Bath Iron Works.*, 512 A.2d 1035, 1038 (Me.1986); *see also Cote v. Georgia–Pacific Corp.*, 596

---

1. Section 68 has been replaced by 39–A M.R.S.A. § 107 (Supp.1994), that contains virtually identical language. *Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, § A–7 (effective January 1, 1993). Because both proceedings were pending on the effective date of Title 39–A, however, this appeal is governed exclusively by former Title 39 and does not implicate the new Act. *Riley v. Bath Iron Works*, 639 A.2d 626, 627 (Me.1994).

A.2d 1004, 1006 (Me.1991) (Commission has no authority to reimburse an injured employee for housekeeping services); *Hird,* 512 A.2d at 1038 (Commission may not employ doctrine of equitable estoppel to bar the assertion of a statute of limitations defense); *Black v. Electronic & Missile Facilities,* 250 A.2d 694, 695 (Me.1969) (Commission lacks authority to adjudicate whether an individual is engaged in unauthorized practice of law). We agree with the hearing officer that because the Act provides no recovery for loss of consortium, the calculation of a loss of consortium claim, in the absence of a judicial determination or an express allocation in a settlement agreement, is not within the authority or traditional expertise of the Board. *Abshire v. City of Rockland,* 388 A.2d 512, 514 (Me.1978); *McKellar v. Clark Equip. Co.,* 472 A.2d 411, 414 (Me.1984). We conclude therefore that it was not error for the hearing officer to find that Nichols failed to meet his burden of proof in this case.[2]

Nichols raises a second issue concerning whether the Board was authorized to apportion the liability for the benefits between the 1979 and 1984 injuries, absent an express statutory grant of such authority. Title 39 M.R.S.A. § 104–B (1989) provides in pertinent part:

1. **Applicability.** Where 2 or more occupational injuries occur, during either a single employment or successive employments, which combine to produce a single incapacitating condition, *and more than one insurer is responsible for that condition,* their liability shall be governed by this section.

2. **Liability to employee.** If an employee has sustained more than one injury while employed by different employers, or if an employee has sustained more than one injury while employed by the same employer and that employer was insured by one insurer when the first injury occurred and insured by another insurer when the subsequent injury or injuries occurred, the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act.

3. **Subrogation.** Any insurer determined to be liable for benefits under subsection 2 shall be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Any such insurer may ... file a petition for an apportionment of liability among the responsible insurers. The commission has jurisdiction over all claims for apportionment under this section. In any proceeding for apportionment, no insurer is bound as to any finding of fact or conclusion of law made in a prior proceeding in which it is not a party.

39 M.R.S.A. § 104–B (1989), *repealed and replaced by* P.L.1991, ch. 885, Section A–7 (effective January 1, 1993), *codified as* 39–A M.R.S.A. § 354 (Supp.1993) (emphasis added). Nichols notes that, pursuant to the plain language of section 104–B, the Board may only apportion liability when there is "more than one insurer" responsible for the employee's incapacitating condition. Nichols contends that because, coincidentally, the same insurer insured successive employers, the Board had no authority to apportion liability in this case. We reject this argument.

One of the exceptions to the strict limitation on the Board's power that we have long recognized is that the Board has the authority to apportion liability in successive injury cases. *Kidder v. Coastal Constr. Co.,* 342 A.2d 729, 734 (Me.1975); *Widdecombe v. National Sea Prods., Inc.,* 389 A.2d 39, 40–41 (Me.1978). Nichols argues, however, that the enactment of section 104–B effectively displaced this apportionment doctrine. *See* P.L.1977, ch. 368 (effective October 24, 1977), *repealed and replaced by* P.L.1981, ch. 474, § 4 (effective September 18, 1981). We rejected a similar argument in *Robbins v. Bates Fabrics, Inc.,* 412 A.2d 374, 378 (Me. 1980). As we noted in that case, the legisla-

---

**2.** Nichols contends that this result will ultimately encourage employees to inflate the value of their loss of consortium claims when they enter into settlement agreements. As the Appellate Division has noted, however, the Board is not required to accept the express allocation provided in a settlement agreement when that allocation is excessive and reflects an effort to commit a fraud against the employer. *Dionne v. Libby–Owens Ford Co.,* Me. W.C.C.App.Div. 79, 82 (Me.1992).

tive purpose of section 104–B was not to displace the right of apportionment, but to ensure that, in successive injury cases involving two employers and their insurers, the second employer's insurer becomes primarily liable for the injury without the necessity of including other insurers in the proceeding. *Id. See also Johnson v. S.D. Warren*, 432 A.2d 431, 434–5 (Me.1981). Although *Robbins* was decided prior to the 1981 amendment to section 104–B, our rationale in that case applies equally to the statute as amended. As we noted in *Robbins*, if the Legislature "intended to divest the Commission of its normal power to apportion responsibility between insurance carriers in successive injury cases, the Legislature would have chosen explicit language to do so." *Robbins*, 412 A.2d at 378. There is nothing in the language or legislative history of the 1981 amendment to suggest an intent to displace this apportionment doctrine. We conclude that although section 104–B applies to successive injuries involving more than one insurer, the Board has authority to apportion liability between the 1979 and 1984 injuries even when, coincidentally, the same insurer insures both employers.

■ Also Nichols contends that, because his injuries predated the inclusion of the phrase "maximum medical improvement" in the statutory definition of permanent impairment, it was error to deny his petition for permanent impairment benefits based on a finding that his condition had not reached a "medical end point." We reject this contention. The phrase "not reached a medical end point" suggests that the condition has not become stabilized, and, as a practical matter, it is impossible to determine the extent of permanent impairment when the condition has not become "permanent." We also reject Nichols's contention that the Board's findings were not supported by competent evidence.

## 2. *Mooers*

Richard L. Mooers suffered a compensable injury to his lower back on October 2, 1989. On October 5, 1989, while en route to a chiropractic office for treatment related to the injury, Mooers suffered a second injury resulting from a car accident. The employer, Augusta Auto Mall, accepted liability for both injuries. Mooers subsequently obtained a settlement against a third party for the car accident in the amount of $45,000. In 1993 the Board granted Augusta Auto Mall's petition to enforce a lien against the third-party settlement and awarded an offset against the entire settlement amount (net of attorney fees). Like Nichols, Mooers urged the Board to allocate a portion of the settlement to his spouse's loss of consortium claim. Mooers provided the Board with a copy of the written settlement agreement which contained no express allocation to lost consortium. Mooers contended that his wife's signature on the agreement suggested that the settlement was made, in part, for loss of consortium. The Board declined to apportion the lien, finding that Mooers failed to meet his burden of proof to show an allocation or to provide a basis for determining the amount of the loss of consortium claim.

Mooers contends that, as the nonmoving party, it was error for the Commission to shift the burden of proof to the employee on this issue. We note that while the general rule is to place the burden of proof on the moving party, workers' compensation law recognizes exceptions when placing the burden on the moving party is impractical or unreasonable. *See e.g., Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1011 (Me.1980) (once the employer shows that a totally incapacitated employee has regained some physical capacity on a petition for review, the employee has the burden of production on the issue of work search); *Fecteau v. Rich Vale Constr.*, 349 A.2d 162, 166 (Me.1975) (presumption that post-injury earnings accurately reflect earning capacity); *Moriarty's Case*, 126 Me. 358, 361, 138 A. 555, 556–7 (1927) (presumption against finding suicidal death); *Mailman's Case*, 118 Me. 172, 181–3, 106 A. 606, 610–11 (1919) (inference that fatality results from work related injury; later codified in 39 M.R.S.A. § 64–A (1989)). Because the employer is typically not a party to the third-party settlement and has no control of or access to evidence of personal damages related to that claim, common sense militates against placing the burden on the employer to prove that no portion of a third-party settlement is allocable to a spouse's loss of

consortium. We conclude that it was not error for the Board to require Mooers to bear the burden of proof on this issue, and we also conclude that, in the absence of an express allocation in a settlement agreement or a judicial determination of the amount of the consortium claim, it was not error for the Board to refuse to allocate a portion of the lien to loss of consortium.

■ Mooers raises a second issue concerning whether the employer can apply a section 68 lien to offset liability for two successive injuries when only the second injury was attributable to a third-party tort. We note that, pursuant to the plain language of section 68, the employer is only entitled to a lien "against the third party liable for the injury." 39 M.R.S.A. § 68 (1989). We conclude that, because there is no third party responsible for the first injury, Augusta Auto Mall should not be entitled to look to the settlement for reimbursement for that injury. Our holding is consistent with the legislative purposes of section 68 which are

> (i) to give the injured worker the benefit of the greater of any tort recovery and any workers' compensation award, (ii) *to relieve the carrier of the compensation burden that the third party's fault has caused it to shoulder,* and (iii) to prevent either a double recovery by the employee or an immunity for the third party tortfeasor.

*Overend v. Elan I Corp.,* 441 A.2d 311, 314 (Me.1982) (emphasis added); *see also Liberty Mutual Ins. Co. v. Weeks,* 404 A.2d 1006, 1009 (Me.1979). We find no legislative intent to allow an employer to offset liability for a work injury when, by mere fortuity, the employee suffers a subsequent work injury resulting from a third party's negligence. *See Drypolcher v. New York Tel. Co.,* 85 A.D.2d 895, 446 N.Y.S.2d 728, 729 (1981); *Industrial Comm'n v. Standard Ins. Co.,* 149 Colo. 587, 370 P.2d 156, 158 (1962); *Heaton v. Kerlan,* 27 Cal.2d 716, 166 P.2d 857, 861 (1946). *See generally,* 2A A. Larson, *The Law of Workmen's Compensation* §§ 72.65, 74.31(c)(1) (1993). Accordingly, we hold that section 68 requires the hearing officer to determine the percentage of the employee's incapacity that is attributable to each injury and to award a lien against the third-party recovery only for those benefits paid or payable for that portion of the employee's incapacity for which the third party is responsible.

The entry is:

The decision of the Workers' Compensation Board in *Nichols v. Cantara & Sons,* WCB–93–262 is affirmed.

The decision of the Workers' Compensation Board in *Mooers v. Augusta Auto Mall,* WCB–93–837 is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.

All concurring.